[Cite as *State v. Bosstic*, 2019-Ohio-1935.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 18CA3671 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| MICHAEL L. BOSSTIC, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Lori J. Rankin, Chillicothe, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

Smith, J.

{¶1} Michael L. Bosstic appeals the judgment entry of the Ross County Common Pleas Court. Bosstic entered a guilty plea to one count of theft, a violation of R.C. 2913.02 and a felony of the fifth degree. As part of Appellant's sentence, he was ordered to make restitution in the amount of $7,000.00. On appeal, Bosstic asserts the trial court erred and violated his right to due process when it held the restitution hearing in his absence. Upon review, we find no merit to his argument. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On November 17, 2017, Michael L. Bosstic, (hereinafter "Appellant"), was indicted by a Ross County Grand Jury on one count of theft, a violation of R.C. 2913.02. On December 8, 2017, Appellant was arraigned and entered a not guilty plea. The arraigning judge established bond, ordered Appellant to pretrial supervision, and ordered no contact with Stephanie Butterbaugh and Dennis Capper, the victims of the alleged theft.

{¶3} The indictment arose from events which occurred in August 2017. Appellant posted a mobile home in the Massieville area for sale on Facebook. Stephanie Butterbaugh contacted Appellant, and the parties communicated through Facebook Messenger and text messages. Butterbaugh and her friend, Dennis Capper, who both reside in Laurelville, Ohio, arranged to meet Appellant and view the mobile home.[1] The purchase price of the mobile home was $7,000.00.

{¶4} On or about August 12, 2017, while viewing the mobile home, Butterbaugh and Capper inquired about purchasing the property on which the home was located. Appellant agreed to sell the land for an additional $1,000.00. On that date, the parties gave Appellant $7,000.00 cash. The parties arranged to meet the next day to pay Appellant the additional money.

---

[1] Butterbaugh testified that she did not remember the exact address. Specifically, she testified "I don't remember the road now but in Massieville, Ohio."

Appellant did not appear. Butterbaugh apparently made a criminal report thereafter.

{¶5} Appellant was appointed an attorney. On June 21, 2018, he entered a guilty plea. However, Appellant disputed the restitution amount. Appellant claimed that $1,200.00 was the amount owed, not $7,000.00. Appellant also requested a delay in disposition of the case because his wife was due to give birth in September. In order to accommodate Appellant's request, the trial court scheduled both the sentencing hearing and the restitution hearing for September 18, 2018. Appellant did not appear on September 18th.

{¶6} The trial court chose to conduct the restitution hearing in Appellant's absence. Appellant's counsel posed a general objection as Appellant's testimony was the only evidence he intended to present. The State presented testimony from Butterbaugh, Capper, and a notary, Norma Walker.

{¶7} Stephanie Butterbaugh identified State's Exhibit A. She testified the document was a notarized agreement between Appellant and her. The terms of the document indicated "they" paid him $7,000.00 "up front," and that they intended to pay him the additional $1,000.00 when they received the title, deed, and "all that." Butterbaugh also identified State's Exhibit B,

a photograph she took which depicted the $7,000.00 in cash she took from a safe owned by Dennis Capper.[2] State's Exhibit D, according to Butterbaugh, was a photocopy of a withdrawal slip from her bank, dated August 14, 2017. The money she withdrew was $1,400.00, with which she intended to pay Appellant the remaining $1,000.00. The extra $400.00 was withdrawn in order to pay for title fees and associated costs.

{¶8} On cross-examination, Stephanie Butterbaugh admitted that there was nothing in the photograph that would identify the money as being hers. She admitted she did not get a receipt from Appellant, but she testified, "Well, we did, the notarized agreement. That pretty [sic] was complete." She also acknowledged she did not remember the address of the property. Dennis Capper's testimony reflected that of Ms. Butterbaugh.

{¶9} Norma Walker, a notary, also identified State's Exhibit A. Walker testified she had known Appellant since his childhood. She further testified that she had seen the top part of the document that Appellant had brought to her to notarize. The top part stated, "I, Michael Bosstic, sold the trailer and one acre of land to Stephanie A. Butterbaugh on 8/12/17 for a total of $8,000." Walker identified Appellant's signature beneath and testified that she had witnessed him sign the document. She testified that

---

[2] Butterbaugh explained that she had received a large sum, approximately $20,000.00 in back pay from Social Security several years prior. She had spent a portion of the money, and she gave Capper the remaining amount to keep for her in his safe.

she had not seen the bottom part that said, "Stephanie Butterbaugh paid $7,000 down today and will pay the remaining $1,000 tomorrow. That wasn't on there when I notarized it." Walker testified that she saw Appellant sign the document but did not see Butterbaugh sign it. On cross-examination Walker testified that Appellant was not sure if the sale was going through and he planned to bring the document back to have the buyers sign. That did not occur. Walker also acknowledged that she did not witness the money transaction. The State's exhibits were admitted into evidence.

{¶10} At the conclusion of the State's evidence, Appellant still had not appeared. Defense counsel requested a continuance of the hearing. The trial court overruled the oral motion. The trial court found that the amount of restitution requested had been proven by a preponderance of the evidence. A bench warrant was issued for Appellant's arrest.

{¶11} Appellant was eventually arrested on the warrant and brought before the court for sentencing on October 16, 2018. Defense counsel again objected to the restitution amount. Appellant addressed the court as follows:

> "My wife, you can see here today in the Courtroom, she's
> actually outside there. She's passed [sic] her due date, that's
> why you actually gave me the extension for until September
> 18th, for her to be, for, our due date was September 11th. She
> went passed [sic] that. They went and seen [sic] her at Berger
> Hospital, she has paperwork on that, when they could, I called

the secretary for my defender, or for my, for my attorney's office and let them know I was on my way.  I got back to Chillicothe a little after four that day and you guys was [sic] already gone.  I know I should have come and turned myself in the next day and explained what had happened and what not I, that was my fault."

{¶12} The trial court imposed a sentence of eight months in prison, to be served concurrent to another prison sentence.[3]   The trial court also ordered restitution in the amount of $7,000.00 be paid to the victims.

{¶13} This timely appeal followed.  Where pertinent, additional facts are set forth below.

### ASSIGNMENT OF ERROR

"I.  THE TRIAL COURT ERRED IN VIOLATION OF MR. BOSSTIC'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 16 OF THE OHIO CONSTITUTION BY OVERRULING MR. BOSSTIC'S OBJECTION TO HOLDING A RESTITUTION HEARING IN ABSTENTIA AND DENYING A CONTINUANCE OF THE HEARING."

### A.  STANDARD OF REVIEW

{¶14} While Appellant frames his assignment of error in terms of a due process violation, in actuality, he is challenging the trial court's decision denying a continuance of the restitution hearing. We

---

[3]  As explained in *State v. Rutherford*, 4th Dist. Pike No. 17CA883, 2018-Ohio-2638, at fn. 4, and *In re Helfrich,* 5th Dist. Licking No.13CA20, 2014-Ohio-1933, at ¶35, we may take judicial notice of the Ross County Clerk of Courts website which reflects that Appellant was to serve his sentence concurrent with Ross County Case No. 15CR400.  See http://eaccess.co.ross.oh.us/eservices/search.page.3, accessed March 20, 2019.

observe that under R.C. 2929.18(A)(1), a trial court must "hold a hearing on restitution if the victim, offender, or survivor disputes the amount." *State v. Blay*, 10th Dist. Franklin No. 11AP-245, 2012-Ohio-62, at ¶12, quoting, *State v. Lamere,* 3rd Dist. Allen No. 1–07–11, 2007-Ohio-4930, ¶10. Implicit within this right to a hearing is the fundamental right to due process at that hearing.  See *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994 (1972).  While the concept of due process may be flexible and amorphous, at a minimum, procedural due process requires an opportunity to be heard. *State v. Cowan,* 103 Ohio St.3d 144, 2004-Ohio-4777, citing *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780 (1971).  It is axiomatic that this opportunity to be heard must be granted in a meaningful manner. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965).

{¶15} Furthermore, "[a]n appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Neal,* 4th Dist. Lawrence Nos. 14CA31, 14CA32, 2015-Ohio-5452, at ¶75, quoting, *State v. Unger,* 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849 (1964) and *State v. Bayless,* 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976).  " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could

honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶23. "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). We are mindful, however, that no court has the authority, within its discretion, to commit an error of law. *State v. Landrum,* 4th Dist. Ross No. 17CA3607, 2018-Ohio-1280, at ¶10, citing, *State v. Boone*, 2017-Ohio-843, 85 N.E.3d 1227, (10th Dist.), ¶9, citing *State v. Moncrief,* 10th Dist. Franklin No. 13AP-391, 2013-Ohio-4571, ¶7. See also *2-J Supply Co. Inc. V. Garrett & Parker, LLC,* 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, ¶9.

## B. LEGAL ANALYSIS

{¶16} Appellant asserts that his attorney's general objection to the trial court's decision to proceed with the restitution hearing, in Appellant's absence, was in effect a motion to continue the hearing so that he could not only be present but also present evidence. Appellant

points out that the transcript reflects that on the hearing date he had contacted his attorney's office and advised he was on his way to the hospital, which would not be an unusual occurrence in his particular family situation.  Appellant also points out no previous continuances had been granted.[4]   However, Appellant contends that denying a continuance when the amount of $7,000.00 was at issue deprived Appellant of his due process right to be heard.  Appellant requests the trial court's order of restitution be vacated and the matter be remanded for a second evidentiary hearing on restitution.

{¶17} In this case, the trial court granted Appellant's request that the sentencing and restitution hearings be continued in order to accommodate Appellant and his wife with regard to the birth of their child.  In open court on June 21, 2018, at Appellant's change of plea hearing, he received notice of his opportunity to be heard.  The date scheduled was nearly three months away.

{¶18} Appellant chose not to attend his opportunity for a meaningful hearing on the issue of restitution.  Thus, we find no merit to his due process argument.  The issue then becomes one of the reasonableness of the court's

---

[4] Appellant concedes that granting a continuance would have been an inconvenience for Butterbaugh and Capper.

decision to deny Appellant a continuance so that he could attend the restitution hearing and present evidence.

{¶19} Appellee State of Ohio responds that the trial court did not abuse its discretion in proceeding with the restitution hearing and denying the motion for continuance.  The State points out that Appellant failed to appear and sufficiently explain his absence. Appellee points out:

1) The State had subpoenaed four witnesses, including the records custodian from a local bank.

2) Appellant had called the office and indicated he would be present by 1:30 for the 1:00 hearing, but did not arrive even by 3:00, with no further explanation.

3) Appellant provided no documentation to support his argument.

4) The State opposed further continuance because the matter had already been set far out, in order to accommodate Appellant's child's birth.

5) After failing to appear, Appellant did not turn himself in and did not report to probation or comply with community control.

6) Appellant did not cooperate with the law enforcement officials who served the warrant on him.

{¶20} We agree with Appellee.  Based on our review of the record, we find the trial court did not abuse its discretion in denying defense counsel's motion for a continuance of the restitution hearing.

{¶21} " 'There are no mechanical tests for deciding when a

denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Neal, supra,* at ¶76, quoting *Unger* at 67, quoting *Ungar,* 376 U.S. at 589. "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* We further observed in *Neal, supra*:

> In evaluating a motion for a continuance, a court should consider (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case.

*Unger,* 423 N.E. 2d 1078, at 67–68.

{¶22} Considering the above factors as set forth in *Unger,* we observe that Appellant's hearing date had already been delayed at his request. Appellant provided no supporting documentation to explain whether his reason for failing to attend the restitution hearing was legitimate. And, Appellant concedes that turning himself in the next day was the appropriate course of action to take, yet he failed to do so.

{¶23} We also observe the well-established principle that a court has the right to control its own docket. *Id.* In this case, the matter had been delayed approximately three months. The State had subpoenaed the victims of Appellant's crime, a notary, and a bank records custodian. Granting defense counsel's oral motion for continuance would have caused some measure of inconvenience to the subpoenaed victims, the other witnesses and to the court.

{¶24} We find the trial court's denial was not arbitrary and did not violate his due process rights. On this record, we do not think potential prejudice to Appellant existed. Prejudice has been defined as affecting the outcome of the proceedings. See *State v. Hunt,* 4th Dist. Scioto No. 17CA3811, 2018-Ohio-4183, at ¶82, (In the context of an ineffective assistance of counsel claim, prejudice, i.e. a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *State v. Short,* 129 Ohio St. 3d 360, 2011-Ohio-3641, 952 N.E. 2d 1121, ¶113; *Strickland v. Washington,* 466 U.S. 688, 687, 104 S. Ct. 2052 (1984)). Had Appellant appeared and testified at the restitution hearing, we do not find his testimony would have changed the outcome of the hearing.

{¶25} Defense counsel acknowledged that on the hearing date, Appellant's testimony was all that would be presented on his behalf. While

Appellant argued vigorously in his closing argument that the victims'

testimony was "less than compelling," and also discredited the exhibits

submitted, the trial court found as follows:

> There is a recognizable minority of people in Ross County that still do business the way they did business one hundred - a hundred years ago. Cash is king. Receipts are frequently unheard of or look like Exhibit A. We've heard the testimony of Ms. Butterbaugh and Mr. Capper. Undisputed that the Agreement was for $8,000. They paid $7,000 the day before and intended to pay another $1,000 when they got the title transferred. First of all, Exhibit A confirms and supports the testimony of Capper and Butterbaugh that the contract was for $8,000. Mike Bosstic signed it. It was notarized. He swore to it. These are unsophisticated people. Stephanie Butterbaugh - somebody wrote in an additional amount but basically it confirms that the amount was going to be $8,000. So the defendant confirmed by his signature that he was going to sell the trailer and the one acre for $8,000.

{¶26} The trial court was in the best position to determine

Butterbaugh, Capper, and Walker's credibility because the court was in the

best position to gauge their demeanor, gestures, and voice inflections, and to

use these observations to weigh credibility. See *State v. Anderson,* 4th Dist.

Highland No. 18CA14, 2019-Ohio-395, at ¶14. We will not second-guess

its judgment. Given that Appellant's crime involved deception, it is unlikely

the trial court would have found his testimony compelling. Thus, it is also

unlikely that a different outcome of the restitution hearing would have

resulted even if Appellant had appeared.

{¶27} For the foregoing reasons, we find the trial court did not abuse its discretion in denying Appellant's oral motion for continuance and conducting the restitution hearing in his absence.  We find no merit to Appellant's sole assignment of error.  As such, it is hereby overruled.  Accordingly, we affirm the judgment of the trial court.


**JUDGMENT AFFIRMED.**


**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hess, J.: Concur in Judgment and Opinion

For the Court,


BY: _____
Jason P. Smith, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**